## UNITED STATES COURT OF INTERNATIONAL TRADE
### BEFORE:

| | |
|---|---|
| Agro Sevilla Aceitunas S. Coop. And.,<br>Angel Camacho Alimentación, S.L.,<br><br>　　　　　　Plaintiffs,<br><br>　　　　　v.<br><br>United States,<br>　　　　　　Defendant. | Court No. 22-00106 |

## <u>COMPLAINT</u>

　　　　Plaintiffs, Agro Sevilla Aceitunas S. Coop. And. ("Agro Sevilla"), and Angel

Camacho Alimentación, S.L. ("Camacho") (collectively the "Plaintiffs"), by and through

their counsel, hereby allege and state the following:

## JURISDICTIONAL STATEMENT

1.　The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) because the

　　action is commenced under Section 516A of the Tariff Act of 1930, as amended, 19

　　U.S.C.§ 1516a. This action contests the final results issued by the U.S. Department of

　　Commerce ("Commerce" or the "Department") on the second administrative review of the

　　countervailing duty order on Ripe Olives from Spain (Case No. C–469–818).

*See Ripe Olives From Spain: Final Results of Countervailing Duty Administrative Review -2019,* 87 Fed. Reg. 13,970 (Dep't of Commerce March 11, 2022) ("Final Results").

2. Commerce's analysis of issues raised in the Final Results is contained in the *Issues and Decision Memorandum for the Final Results of the Countervailing Duty Administrative Review of Ripe Olives from Spain*; 2019, issued on March 4, 2022 (the "POR2 I&D Memo").

### STANDING OF PLAINTIFFS

3. Plaintiffs, Agro Sevilla and Camacho, are foreign producers and exporters of subject merchandise who were parties in the countervailing duty administration review now being challenged, and who are therefore interested parties, as defined in section 771(9)(A) and 516A(f)(3) of the Tariff Act of 1930, as amended, 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3). Plaintiffs fully participated in the proceeding being challenged. Plaintiffs have standing to bring this action under section 516A(d) of the Tariff Act of 1930, 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(e).

### TIMELINESS OF THIS ACTION

4. Commerce published notice of the contested Final Results on March 11, 2022. *See* 87 Fed. Reg. 13,970. This action was commenced with the filing of the Summons on April 6, 2022, within 30 days after publication of the Final Results, and this complaint on the same day. Accordingly, this action is timely filed under 19 U.S.C § 1516a(a)(2)(A).

**STATEMENT OF FACTS**

5.  The original CVD order on ripe olives from Spain was imposed on June 2018. *See Ripe*

*Olives From Spain: Final Affirmative Determination of Sales at Less Than Fair Value*, 83

Fed. Reg. 28,193 (June 18, 2018) and accompanying Final I&D Memo. The final results

were amended in *Ripe Olives from Spain: Amended Final Affirmative Countervailing Duty*

*Determination and Countervailing Duty Order*, 83 Fed. Reg. 37,469 (Aug. 1, 2018).

6.  The original CVD order was challenged before this Court in Ct. No. 18-00195. On January

17, 2020, the Court issued Slip. Op. 20-08 and ordered the remand of Commerce's Final

Determination. The Court's found that Commerce did not provide an explanation or

interpretation of Section 771(5A)(D)(i) of the Tariff Act of 1930 to support its conclusion on

*de jure* specificity with respect to BPS and Greening support payments. Slip. Op. 20-08 at

20. In addition, the Court found that Commerce did not lawfully apply Section 771B of the

Tariff Act of 1930 with respect to the attribution of subsidies received by growers of the raw

agricultural product identified by Commerce in the underlying proceeding. *Id*. at 26.

7.  On June 1, 2020, Commerce issued its Remand Redetermination. *Final Results on Remand*

*Redetermination, pursuant to Court No. 18-00195, Slip Op. 20-8* (Ct. Int'l Trade January 17,

2020). The Court reviewed Commerce's Remand Redetermination and declined to affirm,

remanding to Commerce for further action in Slip Op. 21-76, dated June 17, 2021. The Court

again found that Commerce failed to apply a lawful interpretation of Section 771(5A)(D)(i)

with respect to its *de jure* specificity finding associated with BPS and Greening support

payments, and with respect to the attribution of subsidies and its interpretation of Section

771B. Slip. Op. 21-76 at 15 and 20.

8.  On November 3, 2021 the Department of Commerce filed its second remand results. Plaintiffs in the said action submitted comments in opposition of the second remand results. On March 16, 2022, the Court issued an order granting a motion for oral argument. An oral argument is scheduled for May 11, 2022 at 11 AM before the Court. Similar essential facts and questions of of law are at issue in the instant appeal.  In addition, a similar action is stayed against Commerce's determination in the first period of review (Court No. 21-00338).

9.  On October 6, 2020, Commerce published the notice of initiation of an administrative review of the CVD order on ripe olives from Spain.  Initiation of Antidumping and Countervailing Duty Administrative Reviews, 86 Fed. Reg. 55811, (Oct. 6, 2020).

10. On September 7, 2021, Commerce published in the Federal Register the preliminary results of the countervailing duty administrative review. *See Ripe Olives From Spain: Preliminary Results of Countervailing Duty Administrative Review; 2019*, 86 Fed. Reg. 50,022 (Sep. 7, 2021) and accompanying decision memorandum. The preliminary results included a subsidy rate for Agro Sevilla of 4.96 percent, for Camacho of 1.07 percent and a 3.09 percent average rate for other companies.

11. Plaintiffs submitted a case brief and rebuttal brief to Commerce on December 10, 2021, and December 17, 2021, respectively, raising multiple legal and factual issues concerning Commerce's preliminary results for the 2019 review.

12. On March 4, 2022, Commerce published its final affirmative countervailing duty determination. *See Ripe Olives From Spain: Final Results of Countervailing Duty Administrative Review; 2019*, 87 Fed. Reg. 13,970 (Dep't of Commerce March 11, 2022). Commerce's final results for the 2019 review applied a subsidy rate for Agro Sevilla of 4.98 percent, for Camacho of 2.43 percent, and a average rate of 3.76 percent to other companies.

13. Among Commerce's findings, it concluded that the two prongs of section 771B of the Act were satisfied, because demand for raw olives varietals principally suitable for use in the production of table olives "is substantially dependent" on the demand for processed olives. POR2 I&D Memo at 14-18. The analytical framework employed by the Department was previously repudiated by this Court. Slip Op. 21-76 at 16-20.

14. Commerce also concluded that BPS and Greening payments were *de jure* specific to olive growers within the meaning of Section 771(5A)(D)(i) based on the same facts and applying the same statutory interpretation and rationale rejected by the Court in Slip Op. 21-76 at 1-25 . POR2 I&D Memo at 19-21.

## STATEMENT OF CLAIMS

15. In the following respects, and for other reasons apparent from the administrative record of Commerce's CVD investigation, the <u>Final Affirmative Determination</u> is not supported by substantial evidence on the record and is otherwise not in accordance with law.

**Count 1: Commerce's construction of Section 771B of the Tariff Act of 1930 and the meaning it assigned to the term "prior stage product" is not supported by substantial evidence and is otherwise contrary to law.**

16. Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 15.

17. Under Section 771B of the Tariff Act of 1930, in the case of an agricultural product processed from a raw agricultural product, Commerce is permitted to impute subsidies received by growers of the raw agricultural product to the producers of the processed product provided two criteria are met: (1) the demand for the prior stage product is substantially dependent on the demand for the latter stage product, and (2) the processing operation adds only limited value to the raw commodity . . . . 19 U.S.C. § 1677-2.

18. In its Final Results, Commerce adopted a construction of the statute in which the "prior stage product" is both distinct from, yet merely a subset of, the "raw agricultural product" Commerce identified, raw olives. That subset consisted of those raw olives "principally suitable for use in the production of table olives," the product Commerce deemed to be the "latter stage product."

19. A construction and conclusion in the underlying proceeding that "prior stage product" is distinct from "raw agricultural product," yet also a subset of the raw agricultural product, defies their proper meaning, renders these terms superfluous, and reduced the examination under Section 771B largely self-fulfilling to the extent that "raw olives principally suitable for use in the production of table olives" are likely processed into table olives. For these reasons, Commerce's construction of Section 771B and the meaning it gave to "prior stage product" in this case is not supported by substantial evidence and otherwise contrary to law.

**Count 2: Commerce's finding that the demand for raw olives principally suitable for use in the production of table olives is substantially dependent on the demand for table olives within the meaning of Section 771B of the Tariff Act of 1930 is not supported by substantial evidence and is otherwise contrary to law.**

20. Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 19.

21. In its Final Results, Commerce's found that the demand for raw olives principally suitable for use in the production of table olives is "substantially dependent" on the demand for table olives within the meaning of Section 771B of the Tariff Act of 1930. Commerce's finding is in error.

22. First, Commerce's definition of "substantially dependent" is at odds with past practice and that term's plain meaning as codified by Congress.

23. Second, record evidence submitted by plaintiffs during the administrative review demonstrated the lack of "substantially dependent" demand based on an analysis of raw olive varietals used to produce table olives but was wrongly rejected by Commerce.

24. Third, record evidence relied upon by Commerce to support its finding of "substantially dependent" demand is grossly distorted and based on assumptions about statistical categories rather than the olive varietals they track and all their uses. But even accepted at face value the same record otherwise demonstrates the lack of "substantially dependent" demand based on Commerce 's own admissions of fact and other evidence on the record regarding olive varietals and their uses.

25. Under the circumstances, Commerce's finding of "substantially dependent" demand is not supported by substantial evidence and otherwise contrary to law.

**Count 3: Commerce's definition of "latter stage product" as that term is used in Section 771B of the Tariff Act of 1930 failed to consider the distinct production lines from the raw olive stage to the final processed product that exist between ripe olives and green fermented olives rendering its definition and ultimate finding of substantially dependent demand not supported by substantial evidence and otherwise contrary to law.**

26. Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 25.

27. In its Final Results, in finding substantially dependent demand Commerce defined the "latter stage product" as that term is used in Section 771B as all table olives.

28. Evidence on the record of the proceeding demonstrated that that the two principal categories of "table olives", "ripe or black olives" and "green or fermented olives", travel along distinct production lines after the same raw stage. As such, the evidence showed that there is no single continuous line of production from the raw agricultural product to the latter stage product Commerce defined. Rather, there are two independent, continuous lines of production from Commerce's "prior stage product," rendering its selected definition of "latter stage product" as

that term is used in Section 771B and thereby its ultimate finding of substantially dependent demand not supported by substantial evidence and otherwise contrary to law.

**Count 4: Commerce's finding that BPS and Greening payments are *de jure* specific is not supported by evidence and otherwise contrary to law.**

29. Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 28.

30. In its Final Results, Commerce found that BPS and Greening payments were *de jure* specific based on the manner in which the Government of Spain implemented predecessor programs that are no longer operative. Specifically, Commerce found that the level of current entitlements under the BPS and Greening programs were based on historical payment levels under predecessor programs found to be *de jure* specific under Section 771(5A)(D)(i) of the Tariff Act of 1930.

31. Record evidence demonstrates that access to BPS and Greening payments is not expressly limited to an enterprise or industry within the meaning of Section 771(5A)(D)(i). Commerce has otherwise conceded that such payments are decoupled from production. The amount of payment is solely dependent on the annual activation of the entitlement, rather than any production activity, type of product, or volume of crop produced.

32. As such, Commerce's finding that BPS and Greening are *de jure* specific within the meaning of Section 771(5A)(D)(i) of the Tariff Act of 1930 on the basis of express limitations found in predecessor programs with no applicability to the current programs examined is not supported by substantial evidence and otherwise contrary to law

## PRAYER FOR JUDGMENT AND RELIEF

WHEREFORE, for the foregoing reasons, Plaintiffs pray that this Court enter judgment as

follows:

(A)    Enter judgment in favor of Plaintiffs;

(B)    Hold as unlawful Commerce's final results of the second administrative review
        of the countervailing duty order on Ripe Olives from Spain that are the subject
        of this Complaint,

(C)    Remand this proceeding to Commerce with instructions to publish revised
        final results and recalculate the countervailing rates applicable to Plaintiffs in
        conformity with the Court's decision; and

(D)    Grant Plaintiffs such additional relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Matthew P McCullough

Matthew P McCullough


**Curtis Mallet-Prevost, Colt &
Mosle LLP**
1717 Pennsylvania Avenue,
N.W. Washington, D.C. 20006
202-452-7373

*Counsel for Plaintiffs*


Dated: 04/06/2022